Good morning. Welcome to the United States Court of Appeals for the Ninth Circuit. I would first like to welcome Judge Pearsall who is sitting with us from the from the great the Great Plains of America and we are delighted Judge Lee and I are delighted to have him with us. We are going to be hearing argument today in six cases. There are two cases that are on the calendar that have been submitted. Singh v. Barr is one of the cases that's been submitted and Britt v. Plumlee is the second case that has been submitted on the briefs. The first case we are going to hear is Mendoza-Valdez v. Barr. So counsel, please when you are ready. Good morning, Your Honors. Frank Rowles, appearing for the petitioner. This is a case involving a distant deportation order that was reopened based on a vacated conviction. No one seems to be questioning the validity of the vacateur and so really we're left with just a question of the propriety of this rather untimely motion, 21 years after the fact. We rather tenaciously rely on Cardoza and Whitesburg which simply stand for the proposition that if the conviction is nullified, then the numerical limitations of a motion to reopen are not applicable. The government makes a great deal of the fact that the Cardoza case was in fact timely. It was filed on day 89 in the 90 days but the rather inconvenient fact of Whitesburg is that it was filed nearly seven years after the order of deportation so it certainly wasn't timely in any way shape or form. But in that case there was no statutory time limit at that time, right? No, there was motion there was a there was a timeliness and there was also there was still there was still 90 days for a motion to reopen under pre-Ira-Ira because in any event the other point the government seems to make is that since the departure bar wasn't implicated that somehow those cases don't apply which is a bit of a straw man or a red herring if you will because that was just an independent ground to deny a motion to reopen. If that's stripped away from the analysis then the only question is should the matter be reopened based on the fact that the underlying deportation order is you know the conviction is vacated. Our other argument is that you know it does really implicate some serious issues of federalism and comedy between the states and the federal government. I mean doesn't the government argue that the the word departure is not found anywhere in 8 CFR subsection 23? Right. So what's how do you how do you address that? Why why isn't that dispositive? Well it's not dispositive because that was not the grounds for denying reopening right I mean they just said that there was no exception to the time in America's right and the departure bar is a now discredited form of denying relief if the alien left the country and re-entered therefore the Vesta Court of Jurisdiction that's not the case. But aren't you citing cases that deal with that question and a particular statute which has that specific language in it which isn't present in the subsection 23? Right it's not but since those cases they you know both of them are sort of intertwined right I mean there was the departure bar you still had to then address whether or not there would be you know the departure bar didn't apply because the conviction had been vacated and that's what some of those cases basically stand for is that if the conviction has been vacated then the departure bar is not implicated. I mean that's literally you know the unpublished case former Justice Kaczynski in Exhibit E he sort of relied on that and said because the conviction was vacated the departure bar is not applicable. So I mean the two it's kind of apples and oranges at the same time they're also somewhat related because the question being is was the prior order legally executed and we say it was not. Could the petitioner have avoided removal if the possession for drugs had not been in play at the time of his removal? Well if we go into a time machine there's a number of things that could have happened. I mean number one he would have been eligible for voluntary departure. He certainly could have applied for asylum. Under the law in that time your eligibility for a form of relief known as suspension of deportation didn't stop even from a final order of removal so he could have basically hung around and might well have been eligible for suspension. However the other point is the you know in order of deportation that flows from an aggravated felony conviction has other Carthaginian consequences. I mean you're ineligible for relief ever. You can't return and you'll be subject to criminal proceedings for re-entry after removal. So there's a whole series of deleterious consequences that flow and again you know like I mean again we know it's not dispositive but that was the same situation in the case that I cited in Exhibit E, the unpublished case. But do you I mean going to I think Judge Lee's question I mean do you agree with the government that there's no question here that your client entered without inspection and that this is simply that this by itself is a deportable offense? I mean unless the alien was a lawful permanent resident that's going to be a situation in every case. So again I think it's not all that different from those cases where it of course is the key part of the case. I mean you know Cardoza and Estrado Rios make it clear that it doesn't have to be the ground of deportation that was alleged. It just has to again it's the key part of the case. They wouldn't have brought proceedings if he didn't have this conviction right. He wouldn't have come to the you know in the real world you don't come to the attention of immigration unless you commit a crime and then they find you right. So that's how he was placed into proceedings on the basis of the conviction. So that's clearly the key part of the government's case. Aren't people removed routinely for being charged with entry without inspection? Right but I mean in the real world you have to do something to come you know we live in a different country. I mean you don't just pick people up right. You generally make your way into deportation proceedings because you committed a crime or perhaps you filed for relief and it was it you weren't eligible. It's very rare that it happens in any other circumstance and in this case that's exactly how it happened. He came to attention of the government by virtue of the conviction. But I mean there's a difference between what would have happened if there hadn't been a conviction as opposed to what the legal consequences are because the convictions been vacated and and this case really isn't about what might have happened had if we were all able to go back into the time machine that you've described. Right but again that's true but we have to live with the fact that that's what happened in this case. You know he came under the purview of the government because of the conviction and the conviction has been vacated and our position is that the case it compels reopening and I can reserve a little time. Thank you. Thank you very much. Good morning. May it please the court. My name is Craig Newell. I'm here on behalf of the Attorney General. Mr. Mendoza has failed to show any abuse of discretion and the denial of his motion were open on the dispositive basis that it was untimely. His key argument is about the Vietasburg and the Cardoso-Teleseca case but those cases do not create some sort of exception to the time limitation. They are substantively different. The first and the key difference is that the motion should open involved in those two cases were not foreclosed by any time limitation. In Vietasburg, the alien filed his motion in 1982. In 1992, there was no time limitation on the motion to reopen. The first time limitation was put in place in the mid 90s through regulation and then it was codified by Congress soon thereafter. And then in Cardoso, we had a timely motion to reopen. So that is a key difference and that the time limitation itself is not just a ministerial requirement. It's a key procedural requirement. It serves the fundamental purpose of giving some sort of finality to immigration removal orders and related decisions and that this case kind of bears out the need for that finality given the significant passage of time since his initial deportation order and the actual deportation and his illegal re-entry. Isn't it a bit unfair for the petitioner? His conviction is vacated years later. I mean, by definition, there's no way it could be timely, right? I mean, if you can't... I mean, isn't there some, at least a fairness argument for the petitioner that sure it's untimely but, you know, in many ways it was because his conviction was vacated, you know, 15, 16 years later. Right, and I see that. And so what he, Mr. Mendoza, his avenue that's left is asking for an act of administrative grace through the board. Sue Esponte reopening his proceedings, which he has not asked the board to do, nor convinced them of that. And while on a common sense way, you may see this as a potential fairness issue. His, the amount of time that has passed that Mr. Mendoza was ordered deported, deported shortly thereafter, illegally rented and then proceeded to illegally live here for 20 plus years. To now put his case back before the agency, it just, it kind of, it disturbs the need for the finality of the remove order. And he, the Department of Homeland Security can reinstate his prior order without, without him being able to collaterally attack that prior deportation order at this, at this moment. And so the, the, the key to this motion to reopen is that it's just untimely and that there's no exception, no specific exception in the regulation and no claim or showing of equitable tolling. And those are the only avenues that were before him. And his emphasis on the, whether the conviction was a key part of the that phrase has no relevance to the timeliness. It has only to whether the departure bar should or should not be applied. And so the court does not need to get into that, that issue at all. And if there are no other questions from the panel. I have one other question. Would the petitioner have been eligible for some status readjustment? If not, but for the conviction on the drug offense? He would, at the time, the inquiry is back at the time of his deportation order. At that time, he was not, nor claimed to be eligible for adjustment of status. He, he at some point married a United States citizen and, and claimed to have obtained approved visa petition, but that seems all after the fact. And so, and he no longer presses that claim that he is currently eligible for adjustment of status under section 245I. Okay, great. Thank you. Thank you, your honors. Very briefly. Um, in terms of, this wasn't really in the record in terms of his, you know, sitting on his rights. I mean, if you see the underlying motion was based on penal codes 1016.3, which was promulgated two years ago. So I mean, that, that avenue of relief didn't exist. Prior to that, you would have to file a writ of habeas corpus, and if you weren't in custody, there was no jurisdiction. So he didn't really sit on his rights until there was a remedy available. In terms of if this case were reopened, he would be eligible for adjustment, and I never departed from that since his wife filed the petition before April 30th, 2001. Obviously, she did it in 1993. He's grandfathered for eligibility for adjustment. And I concede, my colleague, that at the time, of course, he wasn't eligible. But again, that's, you know, again, to, you know, quote Justice Kaczynski in that case, the facts are basically the same, right? I mean, he wasn't eligible for any relief at the time, but it still formed the basis of the deportation, and he granted reopening. And the facts are essentially the same. I mean, the conviction was like here, you know, in the Clinton administration. He filed the motion many years later. So there's no real, you know, difference to speak of. Was there a reason why the petitioner didn't argue for sua sponte authority at the BIA? I guess you're looking at me. I thought I was strong on the merits. I mean, I really did. And the sua sponte motions, in my experience, rarely go anywhere. Perhaps I should have. But again, we were, felt we were strong on the merits, and so we didn't go sua sponte. And I would submit the matter. Thank you. Thank you, counsel. The case just argued will be submitted.
judges: Bennett, Lee, Piersol